LUMBARD, Circuit Judge
(dissenting):
The purpose of a discharge in bankruptcy is to free a debtor from prior claims and give him a fresh start. Debts excepted from discharge, including alimony, are delimited explicitly in the statute, 11 U.S.C. § 523(a), and should not be expanded lightly. For a debt to escape discharge as “alimony,” the statute plainly requires that the debt be payable to the ex-spouse and that it really be alimony. Today this court rejects the plain words of the statute, expanding “alimony” to include a debt not to the ex-spouse but to her attorney. I cannot agree.
Shirley Spong sued Theodore Spong for divorce in 1977. On July 13, 1979, the parties entered into a stipulation awarding $175 per month to Shirley as alimony and awarding to Raymond Pauley, her attorney, $10,000 in counsel fees. Shirley agreed to pay $6,000; her husband, $4,000 plus costs of $514.40. The stipulation was incorporated in the divorce decree of November 2, 1979. Meanwhile, on October 16, 1979 Theodore Spong had filed a bankruptcy petition listing Pauley’s fee, now grown to $4,575, as a dischargeable debt under 11 U.S.C. § 523(a)(5).[1]
The statute is set forth in the majority opinion and need not be repeated here. The main portion exempts from discharge only debts payable to a spouse or child. Subpar-agraph (A) further provides that even non-dischargeable debts are discharged if assigned away by the spouse or child. Plainly, Congress wanted only spouses and children to benefit from § 523(a)(5). Pauley is neither.
The majority finds this of no moment. Citing House Hearings, the majority finds that Congress meant to exclude not third parties like Pauley but only state welfare agencies as assignees of a claim. But the House Bill did not have an anti-assignment clause. See H.R. 8200, § 523(a)(5) p. 97, 95th Cong., 1st Sess. (1977); H.R. 8200, § 523(a)(5) p. 98, 95th Cong., 2d Sess. (1978). That clause was added in reaction to the Senate Bill, S. 2266 § 523(a)(6) p. 96, 95th Cong., 2d Sess. (1978). The majority is using House history to explain a clause deriving from a Senate Bill. I find more persuasive the statement in both committee reports that § 523(a)(5) codifies the result in Fife v. Fife, 1 Utah 2d 281, 265 P.2d 642 (1954). See Senate Report No. 95-989, 95th Cong. 2d Sess. 79 (1978); House Report No. 95-595, 95th Cong. 1st Sess. 364 (1977). Fife held that claims by third parties, though incorporated into an annulment decree, were nonetheless discharged in bankruptcy. That holding seems directly applicable to the case before us.
Moreover, § 523(a)(5)(B) further limits discharge to those debts “actually in the nature of alimony.” Both House and Senate reports state in identical language that “[wjhat constitutes alimony will be determined under the bankruptcy laws, not State law.” Senate Report supra, at 79; House Report supra, at 364. The majority reads this passage as permitting their reliance on state law. I disagree. Bankruptcy law is *12 uniform, state law is diverse. When Congress directs us to determine a matter under bankruptcy law, recourse to state law seems inappropriate. It is also an abdication of responsibility. On the majority’s reasoning, divorce counsel may collect his fee from the debtor as “alimony” even where the client spouse has been awarded no alimony at all. E. g., In re Trichon, 11 B.R. 658, 4 C.B.C.2d 728, Bankr.L.Rep. (CCH) ¶ 68,048 (Bkrtcy.S.D.N.Y.1981). Finally, the majority expands the alimony exemption to fulfill the state law objective of providing counsel in divorce proceedings. But in so doing, the majority disserves the bankruptcy objective of providing the debt- or with a fresh start. This result seems at odds with Congress’s command that we follow bankruptcy law.
I would affirm the judgment of the district court.

. Pauley’s claim for $4,575 makes him Spong’s largest unsecured creditor. Only Columbia Banking Savings & Loan, which holds a $35,-000 mortgage on Spong’s house, claims more from the debtor.